1  HAROLD M. BRODY, SBN 084927 **ADR**
   MYLENE J. BROOKS, SBN 175533
2  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
3  Los Angeles, CA 90067-3206
   Telephone:    (310) 557-2900
4  Facsimile:    (310) 557-2193    **E-FILING**
   Email: hbrody@proskauer.com
5  Email: mybrooks@proskauer.com

6  Attorneys for Defendant
   COLLEGE ENTRANCE EXAMINATION
7  BOARD

8

                  UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN JOSE DIVISION
11

12  MATTHEW GUAGLIARDO,            C07  05325 PVT
                                   Case No.
13            Plaintiff,
                                   NOTICE OF REMOVAL OF CIVIL
14       v.                        ACTION - DIVERSITY

15  COLLEGE ENTRANCE EXAMINATION   [28 U.S.C. § 1441(b)]
    BOARD, and DOES 1 through 50, inclusive,
16
              Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

7607/18713-004
Current/10191244v2

                         **NOTICE OF REMOVAL**

1  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2        PLEASE TAKE NOTICE that Defendant College Entrance Examination Board

3  ("Defendant") hereby removes to this Court the state court action described below.

4        1.      On August 31, 2007, an action was commenced in Santa Clara County Superior

5  Court of the State of California, entitled *Matthew Guagliardo, Plaintiff, v. College Entrance*

6  *Examination Board, and Does 1 through 50, inclusive, Defendants,* Case Number 107CV093384

7  (the "Action").

8        2.      The removal period is triggered by service of process, which in state court actions

9  is governed by state law. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing,*

10 *Inc.,* 526 U.S. 344, 354, 119 S. Ct. 1322, 1329 (1999) (service of process is the official trigger for

11 responsive action by a named defendant). When service becomes effective is also determined by

12 state law. *See City of Clarksdale v. BellSouth Telecommunications, Inc.,* 428 F.3d 206, 210 (5th

13 Cir. 2005).

14       3.      On or about August 31, 2007, counsel for Plaintiff, Matthew Guagliardo

15 ("Plaintiff") mailed a copy of the Summons, Complaint and Notice and Acknowledgment of

16 Receipt thereof to Defendant's counsel. (Declaration of Harold M. Brody ("Brody Decl."), ¶ 2.)

17 *See also* Cal. Civ. Proc. Code § 415.30(a) (summons and complaint may be served by mail). On

18 September 20, 2007, counsel for Defendant signed and returned to Plaintiff's counsel the Notice

19 and Acknowledgement of Receipt, thus effecting service on Defendant. (*Id.*) *See also* Cal. Civ.

20 Proc. Code § 415.30(c) (service of summons is deemed complete on the date the defendant signs

21 the acknowledgment). (True and correct copies of the Summons and Complaint are attached

22 hereto as Exhibit "A." The Notice and Acknowledgment of Receipt is attached hereto as Exhibit

23 "B.")

24       4.      This Notice of Removal is being filed within 30 days of the date Defendant

25 acknowledged receipt of the Summons and Complaint, thus, it is timely filed pursuant to 28

26 U.S.C. section 1446(b).

27

28

7607/18713-004
Current/10191244v2

NOTICE OF REMOVAL

5.     On October 17, 2007, Defendant filed an Answer to the Complaint in the Santa Clara Superior Court. (Brody Decl., ¶ 3.) (A true and correct copy of the Answer is attached as Exhibit "C.")

6.     Notice of this removal is being given both to the adverse party and to the state court pursuant to 28 U.S.C. section 1446(d). (Brody Decl., ¶ 4-5.) (A true and correct copy of the Notice to Adverse Party of Removal to be finalized is attached as Exhibit "D"; a true and correct copy of the Notice to State Court of Removal to be finalized is attached hereto as Exhibit "E.")

## DIVERSITY JURISDICTION AND REMOVAL

### (28 U.S.C §§ 1332, 1441, 1446)

7.     Defendant is informed and believes that Plaintiff Matthew Guagliardo was, and still is, a citizen of the State of California. (*See* Complaint, ¶ 1.) Defendant College Entrance Examination Board was, at the time of filing of this Action, and still is, a corporation incorporated under the laws of the State of New York, having its corporate headquarters and principal place of business in New York, New York. (*See* Complaint, ¶ 2.) Thus, Defendant College Entrance Examination Board is a citizen of the State of New York and was neither incorporated nor had its principal place of business in California. Accordingly, diversity jurisdiction is met on the face of the Complaint. 28 U.S.C. § 1332(c)(1).

8.     This action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. section 1332, and one which may be removed to this Court pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.     Plaintiff also has named as defendants "Does 1 through 50, inclusive." Thus far, to Defendant's knowledge, none of the Doe defendants has been served. (Brody Decl., ¶ 2.) In any event, the citizenship of defendants sued under fictitious names is to be disregarded for the purposes of determining diversity. *See* 28 U.S.C. § 1441(a).

10.     In his Complaint, Plaintiff seeks the following damages according to proof: (1) compensatory damages; (2) punitive damages; (3) interest; (4) penalties pursuant to Labor Code

7607/18713-004
Current/10191244v2

1    section 203; and (5) attorney fees. He also seeks costs of suit and "such other and further relief as

2    the court deems just and proper." (*See* Complaint, *Prayer for Relief*.)

3        11.    Although Plaintiff has not specified the precise amount of damages sought, the

4    nature of the claims he attempts to plead — termination in violation of public policy, retaliation,

5    failure to pay accrued vacation, and violation of Labor Code section 201 — reveals that the

6    amount in controversy "more likely than not" exceeds the jurisdictional minimum of $75,000. *See*

7    *Guglielmino v. McKee Foods Corporation*, ___ F.3d ___, 2007 U.S. App. Lexis 23654 (9th Cir.

8    Oct. 9, 2007) (Ninth Circuit affirmed district court's determination of preponderance of evidence

9    standard when defendant is required to establish amount in controversy for removal). [A copy of

10   this case is attached for the Court's convenience]. *See also Sanchez v. Monumental Life Ins. Co.*,

11   102 F.3d 398, 404 (9th Cir. 1996) (same).

12       12.    The removing defendant may make the requisite showing by either (1)

13   demonstrating that it is "facially apparent" from the complaint that the claims likely exceed

14   $75,000 (*e.g.*, claims of punitive damages, etc.), or (2) setting forth facts in the notice of removal

15   that support a finding of the requisite amount under a preponderance of evidence standard. *See,*

16   *e.g., Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Guglielmino*, ___ F.3d ___,

17   2007 U.S. App. Lexis 23654 at *9 (*citing Sanchez*, 102 F.3d at 404).

18       13.    Here, Defendant's burden of proof is met because it is "facially apparent" from

19   Plaintiff's lengthy list of damages sought, including punitive damages, and claim for attorneys'

20   fees that, more likely than not, the jurisdictional amount is exceeded even though the Complaint

21   fails to allege a specific amount of damages. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365 (9th

22   Cir.), *cert. denied*, 459 U.S. 945 (1982) (in determining whether a complaint meets the $75,000

23   amount in controversy threshold, a court properly may consider the value of claims for attorneys'

24   fees as well as damages); *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 241, 64 S. Ct. 5, 6,

25   88 L. Ed. 15 (1943) (amount in controversy requirement met if plaintiff "might recover" award of

26   compensatory and punitive damages in excess of amount in controversy requirement). *See also*

27   *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute

28   authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees

3

1  may be included in the amount in controversy"); *White v. FCI USA, Inc.*, 319 F.3d 672, 674-675

2  (5th Cir. 1999) (facially apparent that plaintiff's wrongful termination claim exceeded $75,000

3  based on her "lengthy list of compensatory and punitive damages" (loss of pay, emotional distress,

4  etc.) combined with a claim for attorneys' fees); *see also Jackson v. Am. Bankers Ins. Co. of Fla.*,

5  976 F. Supp. 1450, 1454 (S.D. Ala. 1997) (appropriate measure of amount in controversy is the

6  litigation value assuming all allegations of complaint are true and jury returns verdict for plaintiffs

7  on all claims made in the complaint).

8       14.    In addition, while Defendant vehemently denies Plaintiff's allegations, including

9  that he is entitled to any monetary relief whatsoever, Plaintiff's purported claims for damages

10  exceed $75,000 based on *Guglielmino* and the other cases cited herein as follows:

11       a.    Plaintiff claims that he is entitled to damages as a result of loss of income

12  and emotional distress because he was terminated in violation of public policy and in retaliation

13  for opposition to unlawful employment practices. (*See* Complaint, ¶¶ 27, 34.) Plaintiff's

14  annualized salary was approximately **$80,000** at the time of his termination, excluding benefits.

15  (Brody Decl., ¶ 6.) In addition, Defendant is informed and believes that as of two months ago,

16  Plaintiff had not secured other employment since his termination. (Brody Decl., ¶ 6.)

17  Accordingly, it is more likely than not that Plaintiff will seek at least one year of lost income

18  measured from his termination in October 2006 to the present. This figure excludes any amounts

19  Plaintiff is seeking for emotional distress.

20       b.    Plaintiff also seeks to recover 3.47 days of accrued vacation pay pursuant to

21  Cal. Labor Code section 227.3, in addition to 30 days of waiting time penalties pursuant to Cal.

22  Labor Code section 203. (*See* Complaint, ¶¶ 37-45.) Considering Plaintiff's annual salary, the

23  alleged unpaid vacation pay would total approximately **$1,065** ($80,000/2,080 hours = $38.46/hr;

24  $38.46 x 8 hrs = $307.68 daily rate; $307.68 x 3.47 days = $1,067.65), while the associated

25  penalty would total approximately **$9,230** ($307.68 daily rate x 30 days = $9,230.40).

26       c.    Furthermore, Plaintiff's claims for attorneys' fees and punitive damages

27  would conservatively increase this number by an additional **$90,000**. *See Guglielmino*, ___ F.3d

28  ___, 2007 U.S. App. Lexis 23654 at *6 (amount in controversy exceeded based on, among other

4

1   things, attorneys' fees "measured by a conservative estimate of 12.5% of the economic damages"

2   and punitive damages "conservatively estimated at a 1:1 ratio to economic damages"). Thus, a

3   conservative estimate of the value of Plaintiff's purported claims exceeds $75,000 by more than

4   two-fold. (*See also* Brody Decl., ¶ 7 (attorneys' fees alone more likely than not to exceed

5   jurisdictional minimum).)

6       15.    Because Plaintiff and Defendant are citizens of different states, and because the

7   Court may disregard the citizenship of Doe defendants, there is complete diversity between the

8   parties. Furthermore, since the amount in controversy threshold is met, the requirements for

9   removal pursuant to 28 U.S.C. sections 1332(a) and 1441(b) are satisfied. Therefore, the Court

10  has original jurisdiction over the Complaint, and each alleged cause of action contained therein,

11  under 28 U.S.C. section 1332. The Complaint and the state court action, therefore, may be

12  removed to this Court pursuant to the provisions of 28 U.S.C. section 1441.

13      16.    In the event this Court should have any questions about the propriety of removal or

14  may be inclined to remand this action, Defendant respectfully requests that the Court issue an

15  order to show cause why the case should not be remanded, affording the parties an opportunity to

16  provide the Court with full briefing and argument. Furthermore, should Plaintiff move to remand

17  this case to the state court, he should be required to stipulate that his damages shall not exceed

18  $75,000. Such a procedure is warranted since a remand order is not subject to review.

19  **INTRADISTRICT ASSIGNMENT**

20  **(28 U.S.C. § 84(a), Civil L.R. 3-5(b))**

21      17.    Because Plaintiff alleges that the Action arose in the County of Santa Clara, and he

22  initially commenced the Action in the Superior Court of the State of California for the County of

23  Santa Clara, the Action once removed is properly assigned to the San Jose Division of the United

24  States District Court for the Northern District of California.

25

26

27

28

7607/18713-004
Current/10191244v2

1    WHEREFORE, Defendant hereby provides notice that Santa Clara Superior Court Case

2  Number 107CV093384 be removed to this Court for all further proceedings.

3  DATED: October 18, 2007

HAROLD M. BRODY
4                                           MYLENE J. BROOKS
PROSKAUER ROSE LLP

5

6                                           Mylene J. Brooks
Attorneys for Defendant
7                                           COLLEGE ENTRANCE EXAMINATION
BOARD

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

**BRODY DECLARATION**

# DECLARATION OF HAROLD M. BRODY

I, Harold M. Brody, declare as follows:

1.      I am a partner in the law firm Proskauer Rose LLP, attorneys of record for Defendant College Entrance Examination Board in the above-captioned action.  I am admitted to practice in the State of California and am also admitted to practice in the United States District Court for the Northern District of California.  I am one of the attorneys responsible for the defense in this case.  Except as may be expressly noted below, I have first-hand knowledge of the facts set forth herein.

2.      On or about September 2, 2007, I received by mail a copy of the Summons and Complaint in the state-court action filed by Plaintiff Matthew Guagliardo, and a Notice and Acknowledgement of Receipt of copies thereof.  On September 20, 2007, I signed the Notice and Acknowledgement of Receipt and returned it to Plaintiff's counsel, thus effecting service on Defendant.  (True and correct copies of the Summons and Complaint are attached as Exhibit "A" and the Notice and Acknowledgment of Receipt is attached as Exhibit "B.")  I am informed and believe that none of the Doe defendants has been served in the above-referenced state court action.

3.      Attached hereto as Exhibit "C" is a true and correct copy of Defendant's Answer to the Complaint filed with the Santa Clara County Superior Court by Defendant on October 17, 2007.

4.      Attached hereto as Exhibit "D" is a true and correct copy of the Notice to Adverse Party of Removal, which will be finalized, filed and served following the filing of this Notice of Removal.

5.      Attached hereto as Exhibit "E" is a true and correct copy of the Notice to State Court of Removal, which will be finalized and filed with the Santa Clara County Superior Court and served following the filing of this Notice of Removal.

6.      I am informed and believe that Plaintiff was hired by Defendant at a monthly salary of $6,666.66 (annualized salary of almost $80,000) and that at the time of his termination less than four months later, his salary remained the same.  (A true and correct copy of Plaintiff's offer letter

7

1  is attached hereto as Exhibit "F.")  I am further informed and believe that as of two months ago,

2  Plaintiff had not secured other employment since his termination.

3         7.      Based on the claims alleged in this case, and my experience litigating similar

4  claims, it is more likely than not that Plaintiff's attorneys' fees alone will approach or exceed the

5  $75,000 threshold.  In the instant case, there will be extensive written discovery, deposition

6  discovery, motion practice, and at least a three to four day trial.  While I am not aware of

7  Plaintiff's counsel's billable rates, the amount of time that will be devoted to a case such as

8  Plaintiff's will more likely than not lead to attorneys' fees for Plaintiff in an amount equal to or

9  greater than $100,000.

10        I declare under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct to the best of my knowledge and belief and that this declaration was

12  executed this 18th day of October 2007 at Los Angeles, California.

13

14                                      _____

15                                      Harold M. Brody

16

17

18

19

20

21

22

23

24

25

26

27

28

8

7607/18713-004
Current/10191244v2

Exhibit A

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COLLEGE ENTRANCE EXAMINATION BOARD, and DOES 1 through 50, inclusive

*18713.004*
*Pldg*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED

2007 AUG 31 P 2: 30

KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY:_____ A. Ilas

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MATTHEW GUAGLIARDO

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante.   Una carta o una llamada telefónica no lo protegen.   Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte.   Es posible que haya un formulario que usted pueda usar para su respuesta.   Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca.   Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.   Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
   Hay otros requisitos legales.   Es recomendable que llame a un abogado inmediatamente.   Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.   Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.   Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Santa Clara County Superior Court<br>191 N. First Street<br>San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):* **07CV093384** |
| --- | --- |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel F. Pyne III (State Bar No. 131955)
HOPKINS & CARLEY, A Law Corporation                    (408) 286-9800          (408) 998-4790
The Letitia Building, 70 South First Street
San Jose, CA 95113-2406
DATE: August 31, 2007                              **AUG 3 1 2007**        A. Ilas
*(Fecha)*                                       Clerk, by _____, Deputy
                                                *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**


Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

F

1  Daniel F. Pyne III (State Bar No. 131955)
   HOPKINS & CARLEY
2  A Law Corporation
   The Letitia Building
3  70 South First Street
   San Jose, California  95113-2406
4
   **mailing address:**
5  Post Office Box 1469
   San Jose, CA  95109-1469
6  Telephone:    (408) 286-9800
   Facsimile:    (408) 998-4790
7
   Attorneys for Plaintiff
8  Matthew Guagliardo

ENDORSED
2007 AUG 31  P  2: 29
KIRI TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY  A. Ilas

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                       COUNTY OF SANTA CLARA

11
   MATTHEW GUAGLIARDO,            CASE NO.: **107CV093384**
12
                Plaintiff,        **COMPLAINT FOR DAMAGES**
13
        v.
14
   COLLEGE ENTRANCE
15 EXAMINATION BOARD, and DOES 1
   through 50, inclusive,
16
                Defendants.
17

18

19                       THE PARTIES

20        1.    Plaintiff Matthew Guagliardo is an individual residing in the County of Fresno,

21 State of California.

22        2.    The plaintiff is informed and believes that defendant College Entrance

23 Examination Board (hereafter referred to as "the College Board") is a New York corporation

24 duly licensed to do business, and doing business, in the State of California with its principal

25 place of business in New York, New York.  The plaintiff is informed and believes that the

26 College Board maintains its California office within the County of Santa Clara.

27        3.    The plaintiff is ignorant of the true names and capacities of the defendants sued

28 herein as Does 1 through 50, inclusive, and therefore sues those defendants by fictitious names.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

1   The plaintiff will amend this complaint to allege the true names and capacities of those

2   defendants as soon as they are ascertained. The plaintiff is informed and believes that each

3   fictitiously named defendant is responsible in some way for the events and damages described

4   herein.

5                        THE COLLEGE BOARD HIRES THE PLAINTIFF

6        4.     The College Board provides a variety of services to educational institutions and

7   students. Among other things, the College Board develops and administers the Scholastic

8   Assessment Test (commonly known as the "SAT"), which is widely used by colleges

9   throughout the United States in their admissions processes, and the Advanced Placement

10  Program, which facilitates the issuance of college credit to students who demonstrate mastery of

11  certain subject matters prior to entering college. The College Board maintains six regional

12  offices, including the Western Regional office in San Jose, California.

13       5.     The College Board hired the plaintiff as Regional Operations Director for its

14  Western Regional Office in June of 2006, and the plaintiff began work with the College Board

15  on July 5, 2006. As Regional Operations Director, the plaintiff's responsibilities included

16  human resources, facilities and finance. Prior to the plaintiff's arrival, the College Board did

17  not employ anyone with expertise in California employment laws at its San Jose facility.

18  THE PLAINTIFF DISCOVERS AND REPORTS ULAWFUL EMPLOYMENT PRACTICES

19       6.     When the plaintiff began work for the College Board, he quickly discovered

20  certain practices which violated applicable law and called them to the attention of senior

21  management. Some of the issues noticed by the plaintiff and reported to senior managers during

22  his first two months of employment included:

23       •   Failure to pay overtime compensation- Shortly after joining the College

24              Board, the plaintiff learned that it had not paid non-exempt employees for a

25              substantial amount of overtime work they performed prior to his arrival, as

26              required by both state and federal law. When the number of overtime hours

27              reported by employees in the College Board's San Jose office rose sharply

28              immediately after the plaintiff's arrival, Executive Vice President of

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

COMPLAINT FOR DAMAGES

1    Operations Connie Smith called the increase in overtime to the plaintiff's

2    attention and asked him to explain it. The plaintiff told Ms. Smith that the

3    increase in overtime hours may be attributed to several factors, including the

4    fact that non-exempt employees in San Jose were then recording their

5    overtime hours, while non-exempt personnel in other offices may not have

6    been doing so;

7    •   <u>Failure to grant meal periods to non-exempt employees</u>- The plaintiff reported

8    to management that the College Board had not granted meal breaks of at least

9    30 minutes to non-exempt employees working five or more hours in a day, as

10   required by California law;

11   •   <u>Injury and Illness Prevention Program</u>- On or about September 1, 2006, the

12   plaintiff notified Executive Director of Human Resources Nina Fleiss that the

13   College Board had not adopted an Injury and Illness Prevention Program, as

14   required by the California Code of Regulations; and

15   •   <u>Improper payment of final wages to terminated employees</u>- The plaintiff also

16   notified Ms. Fleiss and Human Resources representative Woody Richards that

17   the College Board was not paying final wages, including accrued vacation, to

18   departing employees in the manner required by California law.

19       7.   College Board management personnel expressed appreciation for the plaintiff's

20   knowledge and expertise when he commenced his employment, but reaction quickly turned

21   from positive to negative as the plaintiff called the foregoing series of employment law

22   violations to the College Board's attention in the hope that problems would be rectified. When

23   the plaintiff suggested that the College Board join the California Employers' Association in

24   order to gain access to resources that would assist it in complying with applicable employment

25   laws in California, the College Board dismissed the suggestion.

26   //

27

28

<u>AL MIJARES BECOMES THE PLAINTIFF'S SUPERVISOR; DISCOVERY OF</u>

<u>UNLAWFUL PRACTICES CONTINUES</u>

8.      On or about September 5, 2006, Al Mijares commenced employment with the College Board as its Western Regional Vice President.  As Regional Operations Director for the College Board's Western Regional Office, the plaintiff began to report to Mr. Mijares at that time.  Mr. Mijares worked outside of the office most of the time and had little opportunity to observe the quality of the plaintiff's work.

9.      On or about September 7, 2006, the plaintiff told Ms. Fleiss that the College Board was requiring exempt employees who left work during the day due to illness or medical appointments to record their time away from work as vacation or sick leave, and expressed his belief that such a practice was unlawful.

<u>THE PLAINTIFF COMPLAINS OF ILLEGAL CONDUCT BY MIJARES</u>

10.      In or about mid-September of 2006, Mr. Mijares asked the plaintiff to inquire about the medical and/or workers' compensation claim histories of certain job applicants. The plaintiff told Mr. Mijares that such inquiries were unlawful in California, believing that they reflected a bias against candidates suffering from medical conditions or disabilities, as well as candidates who had filed claims for workers' compensation benefits.  Mr. Mijares responded by telling the plaintiff that he needed to "be more flexible" in his attitude toward employment laws and that he needed to embrace the College Board's practices and policies, even when those practices or policies were not consistent with applicable law, then directed him to "find a way" to obtain the information in question.  When the plaintiff again resisted Mr. Mijares' request to engage in unlawful behavior, Mr. Mijares told him "it looks like you would rather lose your job than compromise your integrity."

11.      The plaintiff informed Ms. Smith that Mr. Mijares had asked him to make illegal inquiries during the hiring process and that Mr. Mijares had persisted in doing so even after being told by the plaintiff that the suggested inquiries were illegal.  Soon thereafter, Mr. Mijares indicated to the plaintiff that he was angry at the plaintiff for having conveyed his concerns to Ms. Smith, telling the plaintiff "don't run to Connie Smith with every little thing."

1  　12.　On or about October 5, 2006, Ms. Smith met with the plaintiff during a visit from

2  the College Board's New York office.  During her meeting with the plaintiff, Ms. Smith asked

3  the plaintiff about his ability to work with Mr. Mijares and the human resources staff, implying

4  strongly that the plaintiff's ongoing concerns regarding illegal practices had disturbed the

5  human resources staff and Mr. Mijares and caused them to view the plaintiff in a negative light.

6  　13.　On numerous occasions during his relatively brief tenure with the College Board,

7  the plaintiff was touched in an offensive manner by other managers, or observed other

8  employees touched in an offensive manner by College Board managers.   On or about October

9  8, 2006, the plaintiff reported to Ms. Smith that he had been touched in an offensive manner by

10  Mr. Mijares and that he had observed other employees being touched in a similarly offensive

11  manner. Ms. Smith took no action in response to his complaints.

12  　　THE COLLEGE BOARD DISCHARGES THE PLAINTIFF FROM EMPLOYMENT

13  　14.　By mid-October of 2006, the plaintiff realized that Mr. Mijares' lax attitude

14  toward compliance with applicable laws represented the norm, rather than the exception, among

15  management at the College Board and began to fear for his job.   On October 26, 2006, the

16  plaintiff asked Mr. Mijares if he was about to be discharged.  Mr. Mijares dismissed the

17  plaintiff's concerns in a cavalier manner, suggesting to the plaintiff that the College Board

18  would offer severance benefits to him if he were discharged, and thereby reinforcing the

19  plaintiff's belief that his employment was in jeopardy due to his ongoing reports of unlawful

20  conduct and practices.

21  　15.　On October 27, 2006, Ms. Smith and Mr. Mijares notified the plaintiff that they

22  had decided to terminate his employment effective immediately.  The College Board did not pay

23  the plaintiff for the vacation that he had accrued but not taken during his employment.

24  　16.　On or about December 1, 2006, the plaintiff formally notified the College Board

25  via counsel of his belief that the College Board had discharged him from employment in

26  retaliation for his complaints about practices that he believed were unlawful.  College Board

27  policy states that allegations of retaliation "will be investigated promptly, thoroughly, and

28  impartially."  Rather than conducting an impartial investigation as stated in its policy, however,

1    the College Board directed its counsel to conduct a purported investigation of the claim.

2    Without interviewing the plaintiff or seeking any information from him beyond that reported in

3    December of 2006, the College Board's counsel concluded that the plaintiff's complaints were

4    not justified.

## FIRST CAUSE OF ACTION

(Termination in violation of public policy)

7        17.    The plaintiff incorporates the allegations in paragraphs 1 through 16 of the

8    complaint as though set forth fully herein.

9        18.    Labor Code section 510 requires employers to pay overtime compensation to

10    employees for work in excess of eight hours per day or in excess of 40 hours per week, as well

11    as the first eight hours of work performed on the seventh day of a single work week.  Labor

12    Code section 510 articulates a fundamental public policy of the State of California.

13        19.    Labor Code section 512 requires employers to provide meal periods of at least 30

14    minutes to non-exempt employees on each day on which the non-exempt employee works at

15    least five hours, unless the employee waives the meal period and works no more than six hours

16    during the day . Labor Code section 512 articulates a fundamental public policy of the State of

17    California.

18        20.    Title 8, California Code of Regulations section 3203 requires employers to

19    establish, implement and maintain an Injury and Illness Prevention Program.  Title 8, California

20    Code of Regulations section 3203 articulates a fundamental public policy of the State of

21    California.

22        21.    Labor Code section 201 requires employers to pay the earned wages, including

23    vacation, of all discharged employees at the time of discharge.  Labor Code section 201

24    articulates a fundamental public policy of the State of California.

25        22.    Government Code section 12940(a) prohibits employers of five or more persons

26    from discriminating against applicants or employees on the basis of the applicant/employee's

27    actual or perceived disability.  Government Code section 12940 articulates a fundamental public

28    policy of the State of California.  During the plaintiff's employment with the College Board, the

1    College Board employed more than five persons.

2        23.    Government Code section 12940(j)(1) prohibits employers and individuals from

3    harassing employees or applicants for employment.  Government Code section 12940(j)(1)

4    articulates a fundamental public policy of the State of California.

5        24.    During his employment with the College Board, the plaintiff complained to

6    College Board management of numerous actual or perceived violations of employment laws by

7    the College Board, including those cited in paragraphs 18 through 23.

8        25.    Defendant College Board terminated the plaintiff's employment in retaliation for

9    the plaintiff's complaints about unlawful employment practices as described herein.

10        26.    In engaging in the conduct described herein, defendant College Board acted with

11    malice, oppression and a conscious disregard for the rights of the plaintiff.

12        27.    As a result of the actions of defendant College Board, the plaintiff has suffered

13    damages, including the loss of income and emotional distress.

14    **SECOND CAUSE OF ACTION**

15    (Retaliation for opposition of unlawful employment practice)

16        28.    The plaintiff incorporates the allegations in paragraphs 1 through 16 and 18

17    through 27 of the complaint as though set forth fully herein.

18        29.    Government Code section 12940(a) prohibits employers of five or more persons

19    from discriminating against applicants or employees on the basis of the applicant/employee's

20    actual or perceived disability.  During the plaintiff's employment with the College Board, the

21    College Board employed more than five persons.

22        30.    Government Code section 12940(j)(1) prohibits employers and individuals from

23    harassing employees or applicants for employment.

24        31.    During his employment with the College Board, the plaintiff complained to

25    College Board management of numerous actual or perceived violations of employment laws by

26    the College Board, including those cited in paragraphs 6, 9, 10, 11 and 13.

27        32.    Defendant College Board terminated the plaintiff's employment in retaliation for

28    the plaintiff's complaints about unlawful employment practices as described herein.

33. In engaging in the conduct described herein, defendant College Board acted with malice, oppression and a conscious disregard for the rights of the plaintiff.

34. As a result of the actions of defendant College Board, the plaintiff has suffered damages, including the loss of income and emotional distress.

35. On or about August 13, 2007, the plaintiff filed a complaint of discrimination with the California Department of Fair Employment and Housing, alleging that the College Board discharged him from employment in retaliation for his complaints about unlawful employment practices as described herein.

36. On or about August 16, 2007, the California Department of Fair Employment and Housing issued a Notice of Case Closure and Right-to-Sue Notice to the plaintiff.

### THIRD CAUSE OF ACTION

(Failure to pay accrued vacation – Labor Code section 227.3)

37. The plaintiff incorporates the allegations in paragraphs 1 through 16, 18 through 27 and 29 through 36 of the complaint as though set forth fully herein.

38. In accordance with College Board policy, the plaintiff began to accrue vacation at a rate of two days per month after completing two months of employment.

39. Between September 5, 2006 and October 27, 2007, the plaintiff accrued 3.47 days of vacation.

40. The plaintiff did not use any of his accrued vacation during his employment with the College Board.

41. The College Board failed and refused to pay the plaintiff at the conclusion of his employment for the vacation that he had accrued but not used.

42. As a result of the College board's failure to pay the plaintiff for the vacation he accrued but did not use during his employment, the plaintiff has suffered damage.

### FOURTH CAUSE OF ACTION

(Violation of Labor Code section 201)

43. The plaintiff incorporates the allegations in paragraphs 1 through 16, 18 through 27, 29 through 36 and 38 through 42 of the complaint as though set forth fully herein.

COMPLAINT FOR DAMAGES

44.    Defendant College Board failed and refused to pay the plaintiff at the conclusion of his employment for the vacation that he had accrued but not used.

45.    As a result of defendant the College Board's failure to pay the plaintiff his accrued but unused vacation, the plaintiff is entitled to penalties for late payment pursuant to Labor Code section 203.

WHEREFORE, plaintiff Matthew Guagliardo prays that the Court:

1.    Award him compensatory damages according to proof;

2.    Award him punitive damages according to proof;

3.    Award him interest according to proof;

4.    Award him penalties pursuant to Labor Code section 203 according to proof;

5.    Award him attorney fees according to proof;

6.    Award him costs of suit incurred herein;

7.    Award such other and further relief as the court deems just and proper.

Dated: August 31, 2007

HOPKINS & CARLEY
A Law Corporation


By: _Daniel F. Pyne_
Daniel F. Pyne III
Attorneys for Plaintiff
Matt Guagliardo

543102.2

Exhibit B

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Daniel F. Pyne III (State Bar No. 131955)<br>HOPKINS & CARLEY, A Law Corporation<br>The Letitia Building<br>70 South First Street<br>San Jose, CA 95113-2406<br>TELEPHONE NO.: (408) 286-9800     FAX NO. *(Optional)*: (408) 998-4790<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff Matthew Guagliardo | F<br>18713.004<br>pldg |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: San Jose, CA 95113
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER: MATTHEW GUAGLIARDO

DEFENDANT/RESPONDENT: COLLEGE ENTRANCE EXAMINATION BOARD, and DOES 1 through 50, inclusive

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>1-07-CV-093384 |
|---|---|

TO *(insert name of party being served)*: Defendant College Entrance Examination Board

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: August 31, 2007

Daniel F. Pyne III
_____
(TYPE OR PRINT NAME)

▶ *Daniel F. Pyne*
_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [X] A copy of the summons and of the complaint.
2. [X] Other: *(specify)*: Civil Lawsuit Notice and Alternative Dispute Resolution Information Sheet

*(To be completed by recipient)*:
Date this form is signed: 9/20/07

Harold M. Brody
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10 |
|---|---|---|

Legal Solutions Plus

# Exhibit C

1  PROSKAUER ROSE LLP
   HAROLD M. BRODY, SBN 084927
2  MYLENE J. BROOKS, SBN 175533
   2049 Century Park East, 32nd Floor
3  Los Angeles, California 90067-3206
   Telephone:    (310) 557-2900
4  Facsimile:    (310) 557-2193

5  Attorneys for Defendant
   COLLEGE ENTRANCE EXAMINATION BOARD

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SANTA CLARA    **FILED BY FAX**

10

11 MATTHEW GUAGLIARDO,                    ) Case No. 107 CV 093384
                                          )
12              Plaintiff,                )
                                          )
13      v.                                ) DEFENDANT'S ANSWER TO
                                          ) PLAINTIFF'S UNVERIFIED
14 COLLEGE ENTRANCE EXAMINATION           ) COMPLAINT
   BOARD, and Does 1 through 50, inclusive,)
15                                        ) [Hon. Joseph Huber, Dept. 8]
                Defendants.               )
16                                        ) Action Filed: August 31, 2007
                                          )

17

18

19

20

21

22

23

24

25

26

27

28

7607/18713-004
Current/10170147v1

DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

ENDORSED FILED

07 OCT 17 PM 1: 56

CHIEF EXEC. OFFICE/CLERK
SUPERIOR COURT
COUNTY OF SANTA CLARA
BY_____ DEPUTY

1    Defendant College Entrance Examination Board ("Defendant") hereby answers the

2    unverified Complaint (the "Complaint") of Plaintiff Matthew Guagliardo ("Plaintiff") as follows:

3

4    **GENERAL DENIAL**

5    Pursuant to the provisions of section 431.30(d) of the California Code of Civil Procedure,

6    Defendant denies, generally and specifically, each and every allegation of the unverified

7    Complaint and further denies, generally and specifically, that Plaintiff is entitled to damages or to

8    any other relief whatsoever by reason of any acts or omissions on the part of Defendant.

9    Defendant also pleads the following separate and affirmative defenses to the Complaint.

10

11    **AFFIRMATIVE DEFENSES**

12    **FIRST AFFIRMATIVE DEFENSE**

13    (Failure of Facts To State A Cause of Action)

14    1.    Neither the Complaint nor any purported cause of action alleged therein states facts

15    sufficient to constitute a claim upon which relief can be granted.

16    **SECOND AFFIRMATIVE DEFENSE**

17    (Managerial Privilege)

18    2.    Defendant and its agents were privileged in the exercise of managerial discretion

19    with respect to Plaintiff's employment and, in their conduct toward Plaintiff, neither Defendant

20    nor its agents abused or exceeded their managerial discretion.

21    **THIRD AFFIRMATIVE DEFENSE**

22    (Attorney Fees Unwarranted)

23    3.    The Complaint fails to state facts sufficient to support an award of attorneys' fees.

24    **FOURTH AFFIRMATIVE DEFENSE**

25    (Reasonableness And Good Faith)

26    4.    Defendant and its agents acted reasonably and in good faith at all times material

27    herein, based on all relevant facts and circumstances known by them at the time they so acted.

28    Accordingly, Plaintiff is barred from any recovery in this action.

**DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

## FIFTH AFFIRMATIVE DEFENSE

### (Good Cause for Termination)

5.    Plaintiff's employment with Defendant was terminated for good cause. Accordingly, Plaintiff is barred from any recovery in this action.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Use Ordinary Care and Diligence in Performance of Job Duties)

6.    Plaintiff's Complaint, and each cause of action alleged therein, is barred in whole or in part by virtue of California Labor Code sections 2854 and 2856 to the extent Plaintiff failed to use ordinary care and diligence in the performance of his duties.

## SEVENTH AFFIRMATIVE DEFENSE

### (Compliance With Statute)

7.    The conduct of Defendant at all times complied with all applicable statutes, regulations and laws; accordingly, the Complaint and each purported cause of action therein are barred.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Punitive Damages)

8.    The Complaint and each purported cause of action alleged therein fail to allege facts sufficient to allow recovery of punitive or exemplary damages from Defendant.

## NINTH AFFIRMATIVE DEFENSE

### (Good Faith Dispute)

9.    If Plaintiff suffered any damage as a result of facts alleged in the Complaint, which Defendant denies, Plaintiff is not entitled to recover penalties under the California Labor Code, including waiting time penalties for failure to pay vacation wages due, because Defendant at all times was acting in good faith.

## TENTH AFFIRMATIVE DEFENSE

### (Failure To Exhaust Administrative Remedies)

10.    The Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, because Plaintiff has failed to exhaust the administrative remedies available to

**DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

1    him under California law, including pursuant to the Fair Employment and Housing Act and the

2    Labor Code.

### ELEVENTH AFFIRMATIVE DEFENSE

(Employment At Will)

5        11.    Plaintiff's employment relationship with Defendant was governed by California

6    Labor Code section 2922 and, therefore, was terminable at will.

### RESERVATION OF RIGHTS

Defendant hereby gives notice that it intends to rely upon such other and further

affirmative defenses as may become available during discovery in this action and reserves the

right to amend its Answer to assert any such defenses.

**WHEREFORE,** Defendant prays for judgment as follows:

1.    That Plaintiff takes nothing by her unverified Complaint herein;

2.    That the unverified Complaint be dismissed;

3.    That judgment be entered in favor of Defendant;

4.    For attorneys' fees;

5.    For costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem proper.

DATED: October 15, 2007                    PROSKAUER ROSE LLP
                                           HAROLD M. BRODY
                                           MYLENE J. BROOKS


                                           By: Mylene J. Brooks
                                           Attorneys for Defendant
                                           COLLEGE ENTRANCE EXAMINATION BOARD

**DEFENDANT'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

**PROOF OF SERVICE**

1

2      I declare that:  I am employed in the County of Los Angeles, California.  I am over the age
of eighteen years and not a party to the within cause; my business address is 2049 Century Park
3      East, Suite 3200, Los Angeles, California 90067-3206.

4      On October 17, 2007, I served the foregoing document described as:

5      **DEFENDANTS' ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

6      ☒      by placing ☐ the original ☒ true copies thereof enclosed in a sealed envelope addressed
as follows:
7
Daniel F. Pyne III
8      Hopkins & Carley
The Letitia Building
9      70 South First St.
San Jose, California 95113-2406
10

11     ☐      (By Fax)  By transmitting a true and correct copy thereof via facsimile transmission.

12     ☒      (By U.S. Mail)  I am "readily familiar" with the firm's practice of collection and
processing correspondence for mailing.  Under that practice, it would be deposited with U.S.
13     postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in
the ordinary course of business.  I am aware that on motion of the party served, service is
14     presumed invalid if postal cancellation date or postage meter date is more than one day after date
of deposit for mailing in affidavit.
15

16     ☐      (By Electronic Mail) By transmitting true and correct copies thereof by electronic
transmission

17     ☐      (By Personal Service)

18           ☐      By personally delivering such envelope to the addressee.

19           ☐      By causing such envelope to be delivered by messenger to the office of the
addressee.
20

21     ☐      (By Next-Day Delivery Service) By causing such envelope to be delivered to the office of
the addressee by overnight delivery via FedEx or by other similar overnight delivery service.

22     ☒      (State) I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.
23

24     ☐      (Federal) I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

25     Executed on October 17, 2007, at Los Angeles, California.

26

27     _____                    _____
       Amy Richardson                              Signature
       Type or Print Name

28

7725/18713-004 Current/10199968v1

# Exhibit D

1  PROSKAUER ROSE LLP
   HAROLD M. BRODY, SBN 084927
2  MYLENE J. BROOKS, SBN 175533
   2049 Century Park East, 32nd Floor
3  Los Angeles, CA 90067-3206
   Telephone:    (310) 557-2900
4  Facsimile:    (310) 557-2193

5  Attorneys for Defendant
   COLLEGE ENTRANCE EXAMINATION
6  BOARD

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SANTA CLARA

10

11  MATTHEW GUAGLIARDO,                    )  Case No. 107CV093384
                                           )
12               Plaintiff,                )
                                           )
13          v.                             )  NOTICE TO ADVERSE PARTY OF
                                           )  REMOVAL TO FEDERAL COURT
14  COLLEGE ENTRANCE EXAMINATION           )
    BOARD, and DOES 1 through 50, inclusive,)
15                                         )  [Hon. Joseph Huber, Dept. 8]
                                           )
16               Defendants.               )  Action Filed: August 31, 2007
                                           )
17  _____   )

18       TO PLAINTIFF MATTHEW GUAGLIARDO AND HIS ATTORNEYS OF RECORD:

19       PLEASE TAKE NOTICE THAT Defendant College Entrance Examination Board filed a

20  Notice of Removal of the herein-captioned action in the United States District Court for the

21  Northern District of California on October 18, 2007, bearing Case No. _____.

22       A true and correct copy of the Notice of Removal filed with the United States District

23  Court for the Northern District of California is attached hereto as Exhibit "A."

24  Dated:  October 18, 2007              PROSKAUER ROSE LLP
                                          HAROLD M. BRODY
25                                        MYLENE J. BROOKS

26

27                                        _____
                                                  Mylene J. Brooks
                                          Attorneys for Defendant
28                                        COLLEGE ENTRANCE EXAMINATION
                                          BOARD

NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT

# Exhibit E

1    PROSKAUER ROSE LLP
     HAROLD M. BRODY, SBN 084927
2    MYLENE J. BROOKS, SBN 175533
     2049 Century Park East, 32nd Floor
3    Los Angeles, CA  90067-3206
     Telephone:    (310) 557-2900
4    Facsimile:    (310) 557-2193

5    Attorneys for Defendant
     COLLEGE ENTRANCE EXAMINATION
6    BOARD

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF SANTA CLARA

10

11   MATTHEW GUAGLIARDO,                    )   Case No. 107CV093384
                                            )
12                   Plaintiff,             )
                                            )
13          v.                              )   NOTICE TO STATE COURT OF
                                            )   FILING OF NOTICE OF REMOVAL
14   COLLEGE ENTRANCE EXAMINATION           )   TO FEDERAL COURT BY
     BOARD, and DOES 1 through 50, inclusive, )   DEFENDANT COLLEGE ENTRANCE
15                                          )   EXAMINATION BOARD
                     Defendants.            )
16                                          )   [Hon. Joseph Huber, Dept. 8]
                                            )
17   _____)   Action Filed: August 31, 2007

18

19

20

21

22

23

24

25

26

27

28

**NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT**

1      TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2      PLEASE TAKE NOTICE that on October 18, 2007, Defendant College Entrance

3 Examination Board filed a Notice of Removal of the above-entitled action pursuant to 28 U.S.C.

4 sections 1332 and 1441(b) in the United States District Court for the Northern District of

5 California, bearing Case Number      . A true and correct copy of the Notice of

6 Removal and accompanying documents filed with the United States District Court for the

7 Northern District of California is attached hereto as Exhibit "A." Pursuant to 28 U.S.C. 1446(d),

8 this Court "shall proceed no further unless and until the case is remanded."

9

10 Dated: October 18, 2007           PROSKAUER ROSE LLP
                                      HAROLD M. BRODY

11                                         MYLENE J. BROOKS

12

13                                         Mylene J. Brooks

14                                       Attorneys for Defendant

15                                       COLLEGE ENTRANCE EXAMINATION
                                      BOARD

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE TO STATE COURT OF REMOVAL TO FEDERAL COURT**

Exhibit F

45 Columbus Avenue, New York, NY 10023-6992    T 212 713-8000    F 212 713-8255    www.collegeboard.com

Mr. Matthew Guagliardo
1576 Birchmeadow Court
San Jose, California 95131

Dear Matt:

We are very pleased to welcome you to the College Board as Director of Regional Operations, within the Administrative Unit of the Western Regional Office of the College Board at the monthly salary of $6,666.66, at pay band 6, effective July 5, 2006.  In your role, you will report to Kris Zavoli, Interim Vice President, Western Regional Office.

The employee benefits to which you will be entitled are listed on the enclosed summary.  They will be explained in further detail either by a human resources staff member or by the Executive Director of Operations during your first week of employment.  Should you have questions in the interim, please contact Connie Smith at 678-644-3513.

This offer is contingent upon your agreement that:

1. During the term of your employment and thereafter, you will agree to keep in confidence and not to use for yourself or others, or divulge to others unless authorized by the College Board, all trade secrets, confidential information, plans, and knowledge or data relating to the College Board and its products and services gained as an employee.  This provision, however, does not apply to information that is now or becomes generally available to the public, except as a result of unauthorized disclosure by you, or is required to be disclosed by law or legal process.

2. Should your employment be terminated either for cause, as outlined in the Employee Handbook, or through resignation, then, for a period of one year following the termination, you (a) will not engage in any business in which the College Board or any of its affiliates (a list of such affiliates will be provided at that time) are engaged in which you were actively involved during your employment, and (b) will not, either directly or indirectly, employ or solicit the employment of any person who is at such time an employee of the College Board or any of its affiliates.

3. You will keep confidential the terms of your employment, including compensation.

4. Your place of employment will be in the offices of The College Board located at 4099 Gateway Place, Suite 550, San Jose, California.

The College Board is an "at will" employer.  This may not be changed by any written document or conduct unless such change is specifically acknowledged in writing and signed by an executive of the organization.

**CollegeBoard**
connect to college success™

Page 2

We are looking forward with genuine pleasure to your joining the staff of the College Board, and we trust that your work with us will be both satisfying and productive.  Please sign and return the second copy of this letter to signify your acceptance of this appointment.

Sincerely yours,

Constance Zalk
Vice President
Human Resources


cc: Human Resources
    Connie Smith




Confirmed and accepted:


_____                    ___7/5/06_____
Candidate's Signature                              Date:

# GUGIELMINO V. McKEE FOODS

1 of 1 DOCUMENT

## CARLO GUGLIELMINO; BRIANT CHUN-HOON, Plaintiffs-Appellants, v. MCKEE FOODS CORPORATION, A TENNESSEE CORPORATION, Defendant-Appellee.

### No. 05-16144

### UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### *2007 U.S. App. LEXIS 23654*

### August 15, 2007, Argued and Submitted, San Francisco, California
### October 9, 2007, Filed

**PRIOR HISTORY:** [*1]

Appeal from the United States District Court for the Northern District of California. D.C. No. CV-05-00620-VRW. Vaughn R. Walker, District Judge, Presiding.
*Chun-Hoon v. McKee Foods Corp., 2006 U.S. Dist. LEXIS 82029 (N.D. Cal., Oct. 31, 2006)*

**COUNSEL:** Edward S. Zusman, San Francisco, California, argued the cause and filed briefs for the plaintiffs-appellants. Kevin K. Eng, San Francisco, California, was also on the briefs.

William H. Pickering, Chattanooga, Tennessee, argued the cause and filed a brief for the defendant-appellee. Anthony A. Jackson, Chattanooga, Tennessee, R. Brian Dixon, San Francisco, California, and Michael Hoffman, San Francisco, California, were also on the briefs.

**JUDGES:** Before: Diarmuid F. O'Scannlain, Michael Daly Hawkins, and Kim McLane Wardlaw, Circuit Judges.

**OPINION BY:** Diarmuid F. O'Scannlain

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide the proper burden of proof to be borne by the removing defendant when plaintiffs move to remand the case to state court and their complaint alleges damages less than the jurisdictional threshold for diversity cases but does not specify a total amount in controversy.

## I

Briant Chun-Hoon and Carlo Guglielmino (collectively "the Distributors") are distributors of McKee Foods' ("McKee") bakery products to retail stores. Although the precise meaning [*2] of the term "distributor" is at issue in the underlying case, roughly stated, the Distributors purchase bakery products (such as Little Debbie snack cakes) from McKee; they deliver the purchased products to local retail stores; they stock the retail shelves and are responsible for arranging, displaying and advertising the products; and they must remove from the shelves damaged goods or goods that are beyond their sell-by date. In addition, the Distributors contend that McKee requires them to buy a specific quantity of product and further makes them financially responsible for any damaged, stale, or old product.

The Distributors filed a complaint against McKee in California Superior Court on January 3, 2005, on behalf of a putative class of persons who entered into "Distributorship Agreements" with McKee. The complaint alleged that McKee had violated various wage and hour laws by treating its distributors as independent contractors instead of employees. Specifically, the complaint alleged that McKee: (1) violated California Labor Code by failing to pay its distributors overtime wages; (2) intentionally defrauded its distributors; (3) made negligent misrepresentations to its distributors; [*3] (4) breached its Distributorship Agreements and other oral and written agreements with its distributors; and (5) violated the California Business and Professions Code by committing unlawful, unfair and fraudulent business practices against its distributors. In addition, in its sixth cause of action, the complaint sought a

declaratory judgment that the distributors of McKee products are, in fact, employees of McKee and not independent contractors.

In paragraph four of the complaint, under the heading "Jurisdiction and Venue," it is alleged that "[t]he damages to each Plaintiff are less than $ 75,000. In addition, the sum of such damages and the value of injunctive relief sought by plaintiff in this action is less than $ 75,000." In its "Prayer for Relief," however, the complaint sought, among other things, damages under statutory and common law, punitive and exemplary damages (as to the fraud count), an accounting of other moneys due to plaintiffs, attorneys' fees, payments of back taxes and benefits, a declaration of the respective rights and obligations of the distributors and of McKee, an injunction prohibiting McKee's unfair business practices, and such other relief as the Court [*4] deemed proper.

On February 10, 2005, McKee filed a notice of removal to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1332. The removal notice stated that "[a]lthough the Complaint affirmatively attempts to allege that the damages suffered by each Plaintiff are less than $ 75,000.00 . . ., the categories of damages actually claimed by Plaintiffs, if recoverable, would be significantly in excess of the $ 75,000.00 minimum amount in controversy (exclusive of interest and costs) required to invoke diversity jurisdiction." The notice of removal attempted to calculate the damages suffered by the Distributors and concluded that economic damages for Hoon would total roughly $ 76,000 (without including attorneys' fees, back taxes, or punitive damages), and that for Guglielmino separately, economic damages (prior to including attorneys' fees, back taxes, or punitive damages) would total roughly $ 150,000. Thus, McKee's calculations purported to show an amount in controversy sufficient to invoke federal jurisdiction.

On March 14, 2005, the Distributors filed a motion under 28 U.S.C. § 1447 for an order remanding the action to state court. Although [*5] they did not dispute that the plaintiffs were diverse from McKee, they challenged McKee's calculations of the amount in controversy and sought to show that less than $ 75,000 was at stake. Hoon and Guglielmino each also filed affidavits stating: "I am not seeking damages in excess of $ 75,000."

The district court, Chief Judge Vaughn Walker

presiding, issued an order denying the Distributors' motion to remand on May 3, 2005. The order explained that there were three possible standards for the removing defendant's burden of proof: (1) that the plaintiff "might recover" in excess of the jurisdictional amount; (2) that the plaintiff is "more likely than not to recover" in excess of the jurisdictional amount (the "preponderance of the evidence standard"); and (3) that the plaintiff is "legally certain to recover" in excess of the jurisdictional amount. The order also explained that no Ninth Circuit precedent was directly on point, because the complaint specified that damages were below the jurisdictional threshold yet did not demand a specific amount. Ultimately, the district court decided that the "preponderance of the evidence" standard should be applied: the defendant has the burden to [*6] show that the allegations in the complaint set forth an amount in controversy that is "more likely than not" greater than $ 75,000. Applying such standard, when (1) economic damages were accounted for, (2) attorneys' fees (measured by a "conservative" estimate of 12.5% of economic damages) were added, and (3) punitive damages ("conservatively estimated" at a 1:1 ratio to economic damages) were added, the district court determined that the amount in controversy for both plaintiffs was in excess of the jurisdictional threshold.

The district court's order was "quick to note" that if the more stringent "legal certainty" test was applied, then McKee would not have carried its burden. [1] It reached this conclusion because it could not be certain that plaintiffs would recover *any* attorneys' fees or punitive damages. Therefore, because it determined that a question of law -- namely the burden of proof standard -- was dispositive of the remand motion, and because it felt that resolution of the question might "substantially advance the termination of the litigation," the district court certified its order for interlocutory review pursuant to 28 U.S.C. § 1292(b).

> 1    The district court noted that [*7] the "legal certainty" test had been applied in a similar, though slightly distinguishable, factual circumstance by the Eleventh Circuit. *See Burns v. Windsor Ins. Co., 31 F.3d 1092 (1994).* It deemed the legal question "sufficiently close" and "determinative" that it decided to certify the question for interlocutory appeal.

Thereafter, and within the ten days provided by 28 U.S.C. § 1292(b), Guglielmino petitioned this Court for

permission to pursue an interlocutory appeal, which we granted.

II

A

The question certified for interlocutory review is "[w]hat is defendant's burden of proof when plaintiffs move to remand pursuant to *28 U.S.C. § 1447(c)* and their state court complaint specifies that their damages are less than the jurisdictional requirement?"

As Chief Judge Walker may have anticipated, we have identified at least three different burdens of proof which might be placed on a removing defendant under varying circumstances. In *Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996)*, we noted that when a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, such requirement is presumptively satisfied [*8] unless it appears to a "legal certainty" that the plaintiff cannot actually recover that amount. *Id. at 402* (discussing *Garza v. Bettcher Indus., Inc., 752 F. Supp. 753, 755-56 (E.D. Mich. 1990)*; *see also St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938)* (stating that when a complaint filed pleads *more* than the jurisdictional amount "the sum claimed by the plaintiff controls if the claim is apparently made in good faith" and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal").

The second situation we have identified is where it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled. In such a circumstance, we apply a preponderance of the evidence standard. *Sanchez, 102 F.3d at 404* ("[T]he removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount."). We have since applied [*9] the preponderance holding in *Sanchez* to complaints filed under the Class Action Fairness Act ("CAFA") that do not specify a particular amount in controversy. *Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 683 (9th Cir. 2006)* (per curiam). [2]

2    In *Abrego Abrego*, we noted that if "the complaint alleges damages of less than the jurisdictional amount, 'more difficult problems are presented,' as to which there is no binding precedent in this circuit." *Id. at 683 n.8* (quoting 14C Charles Alan Wright et al., Federal Practice and Procedure § 3725, at 84).

Finally, in our recent decision in *Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994 (9th Cir. 2007)*, we held in the CAFA context that when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the "party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Id. at 1000.* [3] Two animating principles informed our judgment in *Lowdermilk*. The first is that federal courts are courts of limited jurisdiction which we will strictly construe. *Id. at 998*. The second principle is that the plaintiff is "master of her complaint" and can plead to avoid [*10] federal jurisdiction. *Id. at 998-99*. Thus, in *Lowdermilk*, by adopting "legal certainty" as the standard of proof, "we guard[ed] the presumption against federal jurisdiction and preserve[d] the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court." *Id. at 999*.

3    McKee contends that *Lowdermilk's* "legal certainty" standard applies only in the CAFA context. It points out that CAFA has discarded the rule -- still applicable in traditional diversity settings such as this case -- that closes the removal period one year after a complaint is filed. *See 28 U.S.C. § 1453(b)* ("A class action may be removed to a district court of the United States in accordance with *section 1446* (except that the 1-year limitation under *section 1446(b)* shall not apply."). We acknowledge that the one-year removal period presents a significant potential for "gamesmanship" in that a plaintiff can wait until the removal period has closed and then amend their complaint to seek higher damages. *See Lowdermilk, 479 F.3d at 1002* (noting that "CAFA mitigates some of the potential for [pleading] abuse by eliminating the one-year removal limitation."). [*11] Whether CAFA's elimination of the closure period is a sufficient distinguishing characteristic of those causes of action to justify a different burden of proof, and whether *Lowdermilk* itself can be read so

narrowly, are questions that we leave for another day and another court.

Therefore, because we have recognized varying burdens of proof depending on the situation and the nature of the plaintiff's complaint, we must as a threshold matter determine precisely what Guglielmino's complaint alleged.

B

The complaint in this case is hardly a paragon of clarity. In the Jurisdiction and Venue section, it is alleged that "[t]he damages to each Plaintiff are less than $ 75,000. In addition, the sum of such damages and the value of injunctive relief sought by plaintiff in this action is less than $ 75,000." In the complaint's Prayer for Relief, however, no mention is made of a total dollar amount in controversy. Instead, the complaint seeks: (1) an Order certifying this action as a class action; (2) damages under statutory and common law; (3) punitive and exemplary damages; (4) an accounting of moneys due to the plaintiffs; (5) attorneys' fees and costs; (6) payment of back taxes and benefits; [*12] (7) notice of the right to recission and restitution to similarly situated distributors; (8) a declaration of the rights and obligations between the distributor-class and McKee; (9) an injunction prohibiting further unfair business practices by McKee; (10) pre-judgment interest; (11) the costs of suit; and (12) "such other and further relief as this Court deems just and proper."

Even if we assume that relief in the form of common law and statutory damages, exemplary and punitive damages, recission and restitution, a declaratory judgment, and an injunction prohibiting further unfair business practices constitutes a "sum . . . less than $ 75,000," that is not all that the complaint seeks. *Section 1332(a)'s* amount-in-controversy requirement excludes only "interest and costs" and therefore includes attorneys' fees. Indeed, the Distributors' complaint seeks attorneys' fees claimed to be authorized pursuant to *California Code of Civil Procedure sections 1021.5* and *1036, Civil Code 1780(d),* and relevant sections of the Labor Code. *Lowdermilk, 479 F.3d at 1000* ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may [*13] be included in the amount in controversy.") (quoting *Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998)).* [4]

4 There was dispute in *Lowdermilk* between the majority and dissent whether the complaint included attorneys' fees within its allegation that the total amount claimed was less than CAFA's $ 5 million jurisdictional threshold. The complaint in *Lowdermilk* apparently read " 'THE AGGREGATE OF CLAIMS DOES NOT EXCEED 5 MILLION DOLLARS . . . In paragraph 4, under a heading 'JURISDICTION AND VENUE,' it says the '[t]he aggregate total of the claims pled herein do [sic] not exceed five million dollars.' " *479 F.3d at 1003* (Kleinfeld, J., dissenting) (quoting the complaint). The majority obviously read these sections of the complaint, and their reference to "aggregate total of claims," to include *everything* sought, including attorneys' fees. In contrast, here the complaint does not use the word "claim" but instead references only "damages and injunctive relief," within neither of which attorneys' fees comfortably fit.

Beyond attorneys' fees, the complaint also seeks the back payment of health benefits and taxes as well as an accounting of moneys due to the Distributors and other [*14] similarly situated class members. Although these allegations seek payment of sums from McKee, they do not fall comfortably within the realm of "damages" and are not labeled as such in the Prayer for Relief. Nonetheless, because the recovery of these sums would entail a payment by McKee, we are convinced that they must be included within any amount-in-controversy calculation. *See Ridder Bros. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944)* (holding that for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may relate to either or any party to the action") (internal quotation omitted)).

Thus, because the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and benefits, the complaint fails to allege a sufficiently specific total amount in controversy. The uncertainty which is inherent in the Distributors' Prayer for Relief places this case within the *Sanchez* line of cases, and we therefore apply the preponderance of the evidence burden of proof to the removing defendant. *Sanchez, 102 F.3d at 404.*

III

The [*15] district court applied a preponderance of the evidence standard and determined that, "conservatively estimated," *both* named plaintiffs' allegations met the requisite $ 75,000 amount-in-controversy threshold. *See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 559, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)* (holding that when a well-pleaded complaint contains "at least one" claim that satisfies the amount-in-controversy requirement, supplemental jurisdiction may be exercised over the claims of other parties). The Distributors do not challenge the district court's factual findings on appeal that under the preponderance standard, this case was properly removed to federal court. We therefore see no need to address any argument that the district court's calculations were clearly erroneous.

Accordingly, because the Distributors' complaint is unclear and does not specify "a total amount in controversy," the proper burden of proof in this case is proof by a preponderance of the evidence. Because that is the standard the district court applied in denying the motion to remand this case to state court, the judgment of the district court is

**AFFIRMED.**

**CONCUR BY: DIARMUID F. O'SCANNLAIN**

**CONCUR**

O'SCANNLAIN, Circuit Judge, specially concurring:

While [*16] we have faithfully applied our precedents to resolve the case before us, I write this special concurrence to note my difficulty with the varied and inconsistent burdens of proof that we place upon defendants who seek to exercise their statutory right of removal under *28 U.S.C. § 1441*. In particular, I disagree with the imposition of a "legal certainty" burden on a party seeking to *invoke* federal jurisdiction, rather than seeking to defeat it. *See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938)*. In my view, in all cases where removal to federal court is challenged in any appropriate way, it is incumbent upon the party seeking federal jurisdiction to prove the *facts* giving rise to such jurisdiction by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)*. Only

then, and only by proof to a legal certainty, can a party *defeat* the exercise of federal jurisdiction which those established facts support. If we had applied such a uniform rule, this would be an easy case that would not be here on interlocutory appeal.

I

A

Based on my view that a uniform burden of proof is required, I find myself in respectful disagreement [*17] with our holding in *Lowdermilk v. U.S. Bank National Ass'n, 479 F.3d 994, 1000 (9th Cir. 2007)*, that, at least in the context of the Class Action Fairness Act ("CAFA") and perhaps beyond, when a plaintiff alleges a specific amount in controversy *less than* the jurisdictional threshold, a removing defendant must prove to a "legal certainty" that the threshold is not exceeded. In my view, this test--which inverts the "legal certainty" test of *St. Paul Mercury, 303 U.S. at 288-89*, by placing such burden on the party seeking to *assert* rather than *defeat* federal jurisdiction--places too high a barrier in the path of defendants seeking to remove a case which it believes belongs in federal court.

In my view, the preponderance of the evidence standard should apply in any case where there is a challenge to the jurisdictional facts of the party seeking to assert federal jurisdiction. This rule is followed in the Fifth, Sixth, Seventh and Eighth Circuits. *See De Aguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir. 1995); Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000)* (relying upon *Gafford v. General Elec. Co., 997 F.2d 150 (6th Cir. 1993))*; Meridian Security Ins. Co. v. Sadowski, 441 F.3d 536 (7th Cir. 2006)*; [*18] *In re Minn. Mut. Life Ins. Co. Sales Practices Litig., 346 F.3d 830, 834 (8th Cir. 2003)*.

In *De Aguilar*, "the plaintiffs, in a bold effort to avoid federal court . . . specifically alleged that their respective damages will not exceed the jurisdictional amount." *47 F.3d at 1410-11*. The Fifth Circuit, noting that the majority of states do not limit damage awards to the *ad damnum* amounts pled in the complaint, adopted the preponderance of the evidence test: "[T]he plaintiff's claim remains presumptively correct unless the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount . . . The defendant must produce evidence that establishes the actual amount in controversy exceeds [the

jurisdictional amount]." *Id. at 1412.* Then, after a defendant meets this burden, removal is proper *unless* the plaintiff can show that it is legally certain that his or her recovery will not exceed the amount stated in the original complaint. *Id.* (citing *St. Paul Mercury* at *303 U.S. 288-89*).

Similarly, in *Meridian*, the Seventh Circuit attempted to organize and to clarify its removal law into a coherent whole. Judge Easterbrook, writing in *Meridian*, [*19] explained that "[w]hat the proponent of jurisdiction must 'prove' is contested factual assertions . . . Jurisdiction itself is a legal conclusion, a *consequence* of facts rather than a provable 'fact.' " *441 F.3d at 540-541* (emphasis in original). The *Meridian* opinion thus emphasized that jurisdictional facts must be distinguished from jurisdictional conclusions: *contested* facts have been established only when they are proved by a preponderance of the evidence. *Id. at 542.* [1]

> 1    In *Lowdermilk*, in adopting our "legal certainty" burden, we stated that "[t]he Seventh Circuit's decision in *Brill v. Countrywide Home Loans, [427 F.3d 446, 448 (7th Cir. 2005)]* is not to the contrary." *Lowdermilk, 479 F.3d at 999 n.6.* After the Seventh Circuit's decisions in *Meridian* and *Oshana v. Coca-Cola Co., 472 F.3d 506, 511 (7th Cir. 2006)*, it is clear that our decision in *Lowdermilk* in fact conflicts with the Seventh Circuit's reasoning.

Concluding, Judge Easterbrook described the appropriate methodology as follows:

> [A] proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. Once the facts have been established, [*20] uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. Only if it is "legally certain" that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed. Once 'jurisdictional facts' have been proved by a preponderance of

the evidence standard, federal jurisdiction may be defeated only by meeting *St. Paul's* legal certainty test.

*Id. at 543.* [2]

> 2    Judge Easterbrook's formulation and, in particular, his explanation of the role of jurisdictional facts, finds support in older case law of our circuit. *See Uston v. Grand Resorts, Inc., 564 F.2d 1217, 1218 (9th Cir. 1977)* (noting that the proponent of jurisdiction "ha[s] the burden of establishing the jurisdictional facts once they were challenged in an appropriate way"); *accord Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967)* ("The question is one of jurisdiction, and we think that we should apply the rules laid down in *McNutt v. General Motors Acceptance Corp.*, that the trial court [*21] is not bound by the pleadings and that the *party asserting jurisdiction* has the burden of establishing it if his allegations are challenged in any appropriate manner.") (emphasis added).

**B**

Thus, in both the Fifth and Seventh Circuits, even where the plaintiff alleges damages less than the jurisdictional amount, a preponderance of the evidence standard applies: when the facts supporting jurisdiction (*i.e.*, that a claim is worth more than $ 75,000) are established as more likely than not, federal jurisdiction is proper unless the "opponent" of federal jurisdiction can show to a legal certainty that jurisdiction is not proper.

This formulation of the respective burdens, as Judge Easterbrook intimated, serves to harmonize the Supreme Court's decisions in *McNutt* and *St. Paul Mercury*. [3] It correctly places the burden of establishing the jurisdictional facts on the party seeking federal jurisdiction. It then allows the party seeking to defeat federal jurisdiction to show that, notwithstanding the proponent of jurisdiction's facts, recovery cannot exceed the jurisdictional threshold.

> 3    In *McNutt*, the Supreme Court stated that "[i]f [a party's] allegations of jurisdictional facts are challenged [*22] by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the

2007 U.S. App. LEXIS 23654, *22

jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *298 U.S. at 189.*

C

In addition to being faithful to Supreme Court precedent, the preponderance standard strikes the proper balance between a plaintiff's desire to remain in state court and a defendant's statutory right to remove. As the *De Aguilar* court noted, imposing a more stringent burden may "fail[ ] adequately to protect defendants from plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand." [4] *47 F.3d at 1411.* Yet at the same time, the standard is not empty rhetoric: the preponderance burden "forces the defendant to do more than point to a state law that might allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [*23] [the jurisdictional amount]." *Id.; see also McNutt, 298 U.S. at 189* (noting that the limits of federal jurisdiction "precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure"). In this way, plaintiffs and defendants are placed on equal footing in seeking a federal courtroom.

> [4] There is little doubt in my mind that Chief Judge Walker was correct in observing that Guglielmino's disclaimer of "the jurisdictional amount is not so obviously the product of counsel's specific assessment of his client's case." Instead, "the complaint here simply maintains -- almost too conveniently -- that plaintiffs' damages 'are less than $ 75,000.' "

II

Further, there are practical concerns with *Lowdermilk's* "legal certainty" burden. For one thing, it may put defendants in neighboring states within this circuit to different burdens of proof based on nothing more than differing state codes of pleading. Some states do not allow *any* mention of damages in state court complaints. Thus, in those states, it may never be possible to plead with the specificity required that damages are less than the jurisdictional [*24] threshold.

In other words, in these states, the complaint will always be silent, triggering the less demanding preponderance of the evidence inquiry of *Sanchez v. Monumental Life Ins. Co., 102 F.3d 398 (9th Cir. 1996).* Or, conversely stated, plaintiffs in these states will never see the benefit of *Lowdermilk's* deferential standard. *See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004)* (noting defendants' frustration that Ariz. R. Civ. P. 8(g) bars plaintiffs from stating a dollar amount or figure for damages); *see also Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992)* (discussing Nev. R. Civ. P. 8(a) which provides that "[w]here a claimant seeks damages of more than $ 10,000, the demand shall be for damages 'in excess of $ 10,000' without further specification of amount."). [5]

> [5] The Advisory Committee Note to Nev. R. Civ. P. 8(a) explains, "[i]n 1971, a restriction was inserted to prohibit allegation of specific amounts of damages in excess of $ 10,000. This was principally to eliminate adverse publicity that results from extravagant claims of damage, and does not restrict counsel in the presentation of their case nor the court or jury on the amount it may award."

In my [*25] view, the availability of federal jurisdiction should not be subject to such vagaries of state pleading law. *See, e.g., Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n, 554 F.2d 1254, 1261 (3d Cir. 1977)* (refusing to adopt a rule which "would make diversity jurisdiction, in situations such as the one at hand, largely dependent upon the vagaries of state law.").

In addition, it is unclear how the legal certainty burden is to be applied against a defendant seeking to establish federal jurisdiction. What type of proof can satisfy such a burden? The very able district judge in this case ran into this very problem when, in alternatively applying the legal certainty test, he calculated the amount of punitive damages and attorneys fees "in controversy" as zero, because "the court cannot say that plaintiffs will recover *any* particular amount of attorneys fees or punitive damages." Does this mean that punitive damages, because they are inherently speculative, will never count towards the total amount in controversy under the legal certainty burden? If not, what type of proof suffices to reach the necessary quantum of a legal certainty? [6] By inverting the *St. Paul Mercury* test and applying [*26] it against a party seeking federal jurisdiction, we raise these practical problems to which

there are no easy answers.

6   In the days of the *St. Paul Mercury* decision, plaintiffs could sue for less by stating an amount claimed. *See Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 375 (9th Cir. 1997)* ("At common law, a statement of the amount claimed was required, and was an upper limit on recovery.") (citing Benjamin J. Shipman, *Common Law Pleading*, 223, 487-89 (3d ed. 1923)). In most jurisdictions, however, the common law rule no longer prevails and the *ad damnum* clause does not set forth an upper limit on recovery. Nonetheless, the *St. Paul Mercury* legal certainty test might still be met by those seeking to defeat federal jurisdiction. One obvious way to meet this burden is to show that recovery under the theory alleged is capped by statute. Or, alternatively, the party might file a binding stipulation, prior to removal, that it will not seek

more in recovery than the jurisdictional threshold. With the legal certainty standard inverted and projected onto those seeking to establish federal jurisdiction, such stratagems are of no help or comfort.

III

If our court applied a single, [*27] consistent burden of proof which a removing defendant must confront, this interlocutory appeal would never have been certified. The preponderance of the evidence standard strikes the correct balance between a plaintiff's right to remain in state court and a defendant's statutory right to remove an action which meets the diversity requirements. In my view, yet recognizing that binding circuit precedent is to the contrary, such a preponderance standard should be applied in all cases where the jurisdictional facts of the party seeking to invoke federal jurisdiction have been properly challenged.